Good morning, Your Honor. My name is Richard Kim. I represent Petitioner Love Korean Church. Petitioner respectfully asks the Court to give a difficult summary judgment against it because first, there is no sufficient and good cause at a time when CISC is not of intention to revoke approved visa petition. Second, CISC's decision to revoke approved visa petition was not based upon reasons specified in notice of intention to terminate approved visa petition. I am troubled by the fact that your client claimed to be here as a full-time student. Is it possible under our law for him to be both at the same time? Actually, my client, when he applied for a visa petition, he met the statutory requirement. He worked as a full-time salary choir director for two years. Therefore, he is eligible for a visa petition, Your Honor. I understand about the church position. What I'm asking is, can he be a full-time student and at the same time be a full-time employee of the church? No, Your Honor. Not possible. Okay. So if we agree with that, then he came into the United States as a full-time student. That's correct, Your Honor. So if he wasn't a full-time student, was he here illegally at that point? When he applied for I-130 petition, he actually stayed in the United States illegally. Okay. So you are admitting that when he applied for the religious worker exemption that required him to be performing this role for two years, he was not a full-time student and he was in the United States illegally at that point. Is that what you're saying? Technically, not, Your Honor, because when he applied I-130 at the initial point, law regulation required he may study and even though he's eligible to apply for I-130, that's why the church granted his visa petition, Your Honor. So while his visa petition was approved, I-145 was pending, then technically he can get paid. I'm not talking about the green card issue. I'm talking about the classification as a student. He came as a full-time student. As I understand your comment, you are admitting that at some point during this process, he was no longer a full-time student, although he was here theoretically because he was a full-time student. That's correct, Your Honor. And as I understand it, you're saying that during that period until if he had obtained the religious exemption, would have taken care of it, but he was here illegally during that time. He was not complying with the terms of his visa. At that time when he applied, the church filed three immigrant visa petitions for him. When the church filed the first visa petition, he maintained his status because the church honestly believed that he could study as a full-time student, still he could be eligible as a choir director for the purpose of applying for the green card. However, on a different point, the IJ seems to have made some, put considerable emphasis on some discrepancies in the schedule of hours that he supposedly had put in to get his two years of full-time religious work. Do you have any explanation? I mean, some of the schedules talked about substantial time spent in library work or in teaching and others did not. Your Honor, at a time when CIS issued a notice of intention to terminate the approved visa petition, the USCIS cited, made the issue, there's only one issue. That issue was, when USCIS issued a notice of intention to terminate the visa petition, there's only one issue. The job description was not related, was not traditional religious function. However, they made only one issue. And at the time when USCIS denied, when USCIS issued revocation notice, they cite different reason. However, in matter of areas, BIS had a decision to revoke approval of visa petition can only be grounded under a factual allegation specified in the notice of intention to terminate approved notice. Counsel, as I see it, I have a question I would like to follow up on Judge Canby's. The service found that, it said that there were two problems. I said that the evidence doesn't show that the beneficiary was working full time as a choir director. Said that at best they could find about 13 hours per week in music related activity. And on the schedule that the church submitted, we have substantial amounts of time, about at least 12 hours a week, in collecting library references and materials. And it turns out to be a substantial part of his day. What is that? Okay. Actually, frankly, Before you answer the question, just for frame of reference, the Korean Love Church is affiliated with the Presbyterian Church, is that correct? Yes, Your Honor. Okay. And how large is the congregation? It has around 200 people, 200 registered. About 200. And how large is the Yeah, 30 members. About 30 members of the choir. Okay, so what are the 12 hours a week spent in collecting library references and materials? Okay. Actually, we submitted two separate job descriptions, and then that was that the job duties you are referring to, proposed job description, which the church has submitted at the first time. But we later added, in response to U.S. Church's request for more documents, more documents, the church has submitted a more detailed job description at that point. Right, you gave us a diagram that gave us a pie shape, and that, and so that one didn't, correspond with the earlier schedule that you had submitted. Yeah, there is some discrepancy, Your Honor, I admit that. Yeah, things just didn't match, things just didn't match up, and the, and immigration was not, was not happy about the fact that it couldn't figure out what he was, what he was doing. But this one schedule that you gave us, you told, you told the service that you had, that he was collecting library references and materials. And I guess I don't understand what that means. Okay, in order to, actually, music director of the church handle all kind of the church's theme and music activities. Therefore, music director is required to search, I mean, collect. He was collecting music for the, for the choir? Yes. Okay, now you separately had listed here that he was selecting choir pieces for the following week, but that was a different entry and a different amount of time. Actually, the choir director required a lot of the, those type of research, research-oriented work, Your Honor. Anything further, counsel? Okay. Your time is up, but is there anything else that you want to, that you want to let us, that you want to talk to us about? Yes, I, I want to make two, I could not make the two, two statements. All right. The first statement, at a time when the USCIS issued notice of intent to termination, USCIS must provide a detailed statement, a specific statement of facts and supporting evidence. However, there was, as far as the supporting evidence is concerned, they refer to only petitioner's letter, which he contained phrase, beneficiary will be hired choir director. However, there's no such petitioner's letter, Your Honor. So there's no, no supporting evidence for the purpose of issuing notice of intention to terminate approved notice. Second, when USCIS issued, when USCIS revoked approved notice, it based on different reason, not at a time. At first stage, they, they, they make issue, only, the only issue they made was the job did not relate to traditional leadership function. However, when they issued this, this revocation, they based on, that is, they based their decision on the job is not full-time position. However, in the Merovia, Merovia areas, BIS held that the base must be same, decision, decision to revoke approval visa petition must be grounded on the factual allegation specified in the notice of the intention, notice of intention to revoke approved petition. And it's USCIS and INS adjudicating field manual 22.2 also state that ultimate decision, ultimate decision can only be based on reason specified, specified in the notice of intention to revoke visa petition. Thus, they did not, USCIS did not follow procedure. Thank you, Your Honor. Okay, thank you. We'll hear from the government. Good morning, Keith Staub on behalf of the appellees. I may please the court. As we've stated in our brief, the immigration service properly revoked the immigration visa because the church failed to establish that Mr. Park would be working in a religious occupation for the two years prior to filing the petition. They submitted some evidence that was contradictory. And as the court pointed out, there were two different schedules. Counsel, is the problem here that it failed to show that he was a full-time employee of the church working in as a choir director, which would go to the questions that I was asking Mr. Kim about distributing library materials and being the Korean teacher and so on? Or is the problem that the service doesn't believe that a choir director is a religious occupation? No, I don't think it's the latter. I think it's the former, that he hadn't shown that he was working in a religious occupation as a choir director. A choir director, if he had been performing those duties and had demonstrated as such, that could be conceivably a religious occupation for the church. The problem here is that he didn't establish that he was working as a choir director full time for those two years. He spent much of his time, probably more of his time, doing library referencing and Korean school duties than he did actually as a choir director. Do you have any idea what the library referencing was? I see it on the schedule, but I'm not exactly sure what it relates to. Did the church have a library that needed maintaining? It's absolutely unclear from the record, which is what the problem here is. The AAO and the Immigration Service didn't have any evidence establishing any link between researching in the library and performing school duties, Korean school duties. And unless they met their burden of showing a link between those duties and some religious function, they didn't meet their burden and the visa should have been revoked. So is it your position, counsel, the government's position, that if you're a choir director, that's all you can do is do the choir? You can't do related secular activities? I don't think that's the case. I think you can perform some administrative duties, but the federal regulation requires that you be coming to the United States solely to perform a religious function. That suggests that the primary duty would be a religious function. So you're talking about primary duty. Some of the examples in the regulation, though, include workers in religious hospitals, religious translators, religious broadcasters. Is it reasonable to assume that somebody who's a hospital worker doesn't take out the garbage or somebody who is there doesn't go down in the kitchen and have something to eat or whatever? I'm puzzled as to the government's construction of this particular regulation. Well, clearly there are some administrative duties involved in any religious occupation, and likewise for a choir director or for a hospital worker. The problem here is he did not establish, the church did not establish, that he was doing much of any religious occupation. He was spending maybe less than a third of his week doing choir practice, and that's the job that they applied for. That's the job. So what percentage, from the government's perspective, in order to qualify under HCFR 204.5M2, what percentage of this gentleman's time did he have to spend leading the choir and doing choir practice? I don't know that the regulation points out a percentage. I don't know that there is a policy that sets forth a percentage of how much secular versus religious. Would it have to be a majority? I would say it would have to be at least a majority. And is there any, do you have any cases, regulations, or anything that would substantiate that? I'm not aware of any that point out a majority other than the regulation itself, which states that the religious worker must be coming to the United States solely to work as a religious occupant, in a religious occupation. Are you familiar with the Soltane case? Yes, I am, Your Honor. You know, that's, Judge, now, Justice Alito wrote that a job may qualify under the regulation if it has some religious significance. So under that circumstance, if we take the reasoning of the Third Circuit and Soltane, why would the activities of this gentleman have to meet a majority of his, spend a majority of his time leading the choir? Why couldn't it relate to library work or teaching or other things that had some religious connotation? Well, there are a limited number of visas that are provided for religious workers. And in order for them to be properly given to those who are actually performing religious functions, the service has to carefully scrutinize the applications. Now, I'm aware of that language. I don't think it's clear from that decision what percentage is involved in the term sum. There's not a whole lot of explanation. Since there's a limited number of these visas, what is the standard applied by the service when they look at these things? They require that you show primarily, if not entirely, religious occupation at the entire time, continuous full-time employment in the position that was applied for, in this case, a choir director. So if we were to agree with the government, I assume you would be looking for some Ninth Amendment exemptions.  And I would also revise the point that if you want a religious worker's exemption, that the applicant has the burden to show that at least a majority of the time is going to be spent on religious work. That would be correct. Well, the AOL, you can read their opinion as saying everything has to be at least related to the religious work, the choir. And that's a standard that's almost impossible to meet, isn't it? I mean, you know, it may be a difficult standard. And as I've stated, I think that some administrative function, some secular function has to be permitted for these religious workers. But in a case like this, where the religious worker shows he's only performed perhaps a third of his time in a religious occupation, he hasn't satisfied the criteria set forth in the regulation. Does everything he does, all the non-religious work, have to relate to his position as choir director? The AOL seemed to say so. I don't know. Well, that is the position that was applied for. The church submitted a substantial documentation showing that he was going to be doing pretty much nothing but choir director work. The verification of weekly duties, 49% is religious performance involving choir duties. 31% is rehearsal involving choir duties. So they demonstrated that he was going to be working solely as a choir director. He held to that accountability. The AAO indicated that there was no evidence that Mr. Park's position related directly to the church's religious creed. Where in the record does the AAO find any substantiation for that position? Your Honor, I looked for that, and I didn't find anything specific to that. I didn't either. What I did find was that in the church's submission, it said, and I'm quoting, the church views religious music as a form of religious worship. The choir director has a calling to express worship through song and music. He leads the congregation in expressing the great message of hymns and teaches the words of Christ and the prophets through music. I didn't find anything to refute that. You know what the AAO relied upon in making its statement? That there was no evidence that his position was part of the creed? I could not find anything that would suggest that. I think it's clear that the regulation even points out that cantors can be performing religious functions. So I think that a choir director, if involved in the religious aspect of the church full time continuously for those two years, it would satisfy the statute. This would also be true of the AAO's finding that there was no evidence that the governing body of the church recognized the position of choir director, right? I have seen nothing supportive. I don't know what the AAO relied on. How many of the AAO's findings have to be wrong for us to reverse? I think the court can, if it finds that there's even one ground for affirming, that would be sufficient. Okay, so the fact that there was inconsistency is sufficient? That's correct. And what would you rely upon in law to substantiate that point? What can you cite us to? I can vaguely recall the RL investment case, but I'd have to, if the court would like, I can perhaps provide further briefing with that, with the cases that cited. By my count, there were five reasons given by the AAO, four of which on the record seem to be inaccurate. The only one that seems to have any substance to it is, number one, that there was inconsistency regarding Park's work schedule. I think it's rather important that we know upon what the government relies in saying that if that's correct, even though the rest of the points made were wrong, that we still have to affirm the AAO. Absolutely, Your Honor. I'd be happy to provide a... Do you want to give us a 28-J letter or something like that, that would substantiate that position? Yes. If the court has no further questions, we'll get on with it. Okay, thank you, Mr. Staub. All right, Love Korean Church is submitted. We thank counsel for the argument.
judges: Canby, Bybee, Smith